**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

C.S. MCCROSSAN CONSTRUCTION, INC.,
a Minnesota corporation, and
CHARLES S. MCCROSSAN, an
individual,

       **Plaintiffs,**

v.                                         Civ. No. 97-896 JP/JHG

PETE K. RAHN, Secretary,
New Mexico State Highway and
Transportation Department, in his official
capacity, and LES FRENCH, State
Purchasing Agent, in his official capacity,

       **Defendants.**


**<u>MEMORANDUM OPINION AND ORDER</u>**

      The parties have submitted this case for decision without trial on the stipulated record.

Having carefully considered the stipulated record in light of the parties' arguments, written and

oral, I find for the Defendants with respect to the Equal Protection Clause claim and for Plaintiff

Charles S. McCrossan with respect to the Privileges and Immunities Clause claim.

I.     <u>Background</u>

      Plaintiff Charles S. McCrossan, a Minnesota resident, owns a majority of the stock of

Plaintiff McCrossan Construction, a Minnesota corporation.  Plaintiffs are engaged in the business

of highway construction.  Defendants are charged with awarding New Mexico state highway

construction contracts in accordance with N.M. Stat. Ann. § 13-4-2 (1997 Repl. Pamp.)

("resident contractor preference" or "preference provision").  N.M. Stat. Ann. § 13-4-2 (E)

requires non-resident contractors to under-bid resident contractors by five percent to win state highway construction contracts. N.M. Stat. Ann. § 13-4-2 (B)(1) defines corporate resident contractors as those whose majority shareholders are state citizens domiciled in New Mexico. Plaintiff McCrossan Construction has bid on New Mexico state highway construction contracts for which it has been the low bidder but by less than five percent. Defendants have applied the resident contractor preference to deny Plaintiff McCrossan Construction those contracts.

The parties essentially agree upon the legal issues presented. Plaintiffs have asked the court to find that the resident contractor preference violates the Equal Protection Clause and the Privileges and Immunities Clause of Article IV, Section 2 ("Privileges and Immunities Clause") of the United States Constitution.[1] Plaintiffs sue under 42 U.S.C. § 1983 seeking declaratory and injunctive relief, and an award of attorneys' fees under 42 U.S.C. § 1988.

II.     Equal Protection Clause

In considering whether a statute such as the Public Works Contract Code preference provision violates the Equal Protection Clause of the United States Constitution, a court must initially examine the nature of the classification at issue. Where, as here, the statute involves neither a fundamental right nor a suspect classification, the "rational basis" standard should apply. Heller v. Doe, 509 U.S. 312, 319-20 (1993). Applying that standard requires that two questions be answered: "(1) Does the challenged legislation have a legitimate purpose? and (2) Was it

---

[1] Plaintiffs do claim in their Opening Brief that Defendants misapply N.M. Stat. Ann. §§ 13-4-1 through -9 ("the Public Works Contract Code") by failing to apply instead sections 13-1-21 through -199 ("the Procurement Contract Code") to state highway construction projects. This claim, not found in their complaint, appears to be made simply to highlight the perceived deficiencies of the Public Works Contract Code preference provision with respect to the two constitutional challenges. Therefore, it will not be considered as a separate basis for relief.

reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?" Western and S. Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 668 (1981).

Plaintiffs argue that the Supreme Court's decision in Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869 (1985) compels a finding that the resident contractor preference in the New Mexico Public Works Contract Code lacks a legitimate purpose. In Metropolitan Life the Court reviewed the validity of an Alabama statute which granted a preference to in-state insurers by imposing a higher tax on gross premiums earned by out-of-state insurers conducting business in Alabama. Id. at 871. For purposes of the challenged statute, Alabama defined an in-state insurer as "a company that both is incorporated in Alabama and has its principal office and chief place of business within the State." Id. n. 2. The state argued that encouraging the formation of insurance companies in Alabama, one of the statute's purposes, was legitimate. The Court disagreed and in a 5-4 decision found that the stated purpose violated the Equal Protection Clause. The majority characterized the purpose put forward by Alabama as "purely and completely discriminatory, designed only to favor domestic industry within the State, no matter what the cost to foreign corporations also seeking to do business there." Id. at 878. The Court then remanded the case for consideration of some fifteen other unspecified purposes not raised on appeal.

Defendants urge a narrow reading of Metropolitan Life and cite to various cases generally upholding preference statutes and ordinances. Plaintiffs acknowledge the existence of these cases which affirm the constitutionality of contract preference statutes, but argue that this case is more like an Alaska case in which a preference was found to be unconstitutional. Compare Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel, 20 F.3d 1311 (4th Cir. 1994);

3

Associated Gen. Contractors of Cal., Inc. v. City and County of San Francisco, 813 F.2d 922 (9th Cir. 1987) overruled in other part by City of Richmond v. J.A. Croson Co., 488 U.S. 469 (1989); Bristol Steel and Iron Works v. State, 507 So. 2d 1233 (La. 1987); Gary Concrete Prods. v. Riley, 331 S.E.2d 335 (S.C. 1985); and Galesburg Constr. Co. v. Board of Trustees, 641 P.2d 745 (Wyo. 1982); with Lynden Transport, Inc. v. State, 532 P.2d 700 (Alaska 1975).  Plaintiffs argue that the breadth of the definitions at issue in each case explains the difference in result.  Plaintiffs' position is that all cases upholding preference statutes have involved statutory or regulatory schemes classifying preference status based on activities within the jurisdiction.  In contrast, Plaintiffs argue, the New Mexico resident contractor preference and the Alaska statute found unconstitutional in Lynden assign preference solely on the basis of residency, without a legitimate purpose.

Plaintiffs continue that even if the Public Works Contract Code resident contractor preference provision has a legitimate purpose, that statute is not rationally related to that purpose.  In support they rely on Rayco Constr. Co. v. Vorsanger, 397 F. Supp. 1105 (E.D. Ark. 1975).  The statute at issue in Rayco gave a preference to those who "satisfactorily performed prior public contracts" and paid state and county taxes in Arkansas for two years prior on "plant and equipment . . . or on other real or personal property. . . ."  Id. at 1108.  The court found the statute unconstitutional because the limitation to prior satisfactory performance of public contracts had no rational relationship to the law's aim of ensuring capable contracting.  The statute also failed because of the lack of evidence tending to show that the tax payment provision served the state's fiscal interest "in any significant way."  Id. at 1112.  Plaintiffs argue that in this case there is an abundance of evidence proving that the New Mexico Public Works Contract

Code preference provision not only fails to serve the state's interest but runs counter to it and that therefore the preference statute is not rationally related to its purpose.

A.    Standing

Defendants concede the standing of the corporate Plaintiff McCrossan Construction to assert an Equal Protection Clause claim but challenge that of the individual Plaintiff, Charles S. McCrossan.  Defendants argue that Plaintiff Charles S. McCrossan, as an individual, has suffered no harm and therefore cannot pursue any claims.  They incorporate their argument on the question of individual standing made with respect to the same argument in the Privileges and Immunities context.  This Memorandum and Opinion and Order will do the same for the analysis of that question.  See infra III.A.  Suffice it to say that Plaintiff Charles S. McCrossan does have standing to litigate both the constitutional claims at issue.

B.    Legitimate purpose

The New Mexico Public Works Contract Code does not state the purpose of the resident contractor provision.  Defendants' expert identifies the purposes as promoting development of the state economy and encouraging the creation and retention of jobs and income for the state's residents, alternately described as preventing economic leakage and encouraging an economic ripple effect.  At oral argument, counsel for Defendants essentially agreed with those purposes.[2] Plaintiffs fairly characterize the putative purposes as threefold.  They claim that the statute purports to promote economic development in New Mexico, to direct state funds to state

_____

[2] Defendants also rely on Heller, 509 U.S. at 320, for the proposition that a state need not put forward evidence to sustain a statute under rational basis attack.  Defendants argue that Heller puts the burden on Plaintiffs "to negate every conceivable basis which might support it, whether or not that basis has a foundation in the record."  Id.

taxpayers, and to support New Mexico's road construction industry. All three, Plaintiffs argue, are not legitimate.

Metropolitan Life suggests initially that a state's desire to protect its economic interests is not a valid purpose. Broadly read, it supports Plaintiffs' position. A closer look, however, reveals two principal reasons why Plaintiffs' reliance is misplaced. First, Metropolitan Life involved taxes on certain businesses. While Plaintiffs liken the Public Works Contract Code preference provision to a tax in that it imposes an additional economic burden on them which then reverts to the state, it is in fact not a tax. The Ninth Circuit Court of Appeals addressed a similar argument in Associated Gen. Contractors, 813 F.2d at 943. In upholding a San Francisco city ordinance giving city contract preference to businesses that maintained a San Francisco presence and paid certain fees from a city address, the court noted that "[u]nlike the statute in Metropolitan, the ordinance in this case affects only the expenditure of public funds." Id. So too in this case does the preference provision affect how public money is spent, in contrast with the tax in Metropolitan Life which, of course, affected how and from whom funds for the public would be collected. Therefore those cases upon which Plaintiff relies holding that a state may not afford dissimilar tax treatment to those within its borders solely on the basis of residence do not control the outcome here. See, e.g., Williams v. Vermont, 472 U.S. 14, 23 (1985).[3]

Second, even the Supreme Court itself has not adopted the broad proposition Plaintiffs

---

[3] Williams is further distinguishable because the tax provision at issue had no rational basis other than raising revenue. The Court found no other legitimate reason for imposing a tax without a credit on Vermont car registrants who first registered their vehicles elsewhere as non-Vermonters, while providing a credit to those Vermont residents who first registered a vehicle elsewhere while they lived in Vermont. See Williams, 47 U.S. at 25. The Court in Williams faced none of the purposes advanced by the preference provision in this case.

urge.  Indeed, just months after <u>Metropolitan Life</u>, the Court upheld statutes designed to promote local banks in two New England states.  The statutes favored out-of-state corporations domiciled within New England seeking to acquire in-state banks over out-of-state corporations domiciled elsewhere.  <u>See</u> <u>Northeast Bancorp, Inc. v. Board of Governors</u>, 472 U.S. 159, 177 (1985).  The Court distinguished <u>Metropolitan Life</u> as not involving the legitimate local economic concern implicated in <u>Northeast Bancorp</u>.  <u>See id.</u> at 177-78.  A reasonable reading of <u>Metropolitan Life</u> suggests that promoting domestic industry <u>is</u> a legitimate purpose.  What seemed to trouble the majority was that the purpose, as well as the result of the law, was also to tax discriminatorily. <u>See</u> <u>Metropolitan Life</u>, 470 U.S. at 1682; <u>Smith Setzer</u>, 20 F.3d at 1321.

The great weight of authority holds that purposes such as those put forward in support of the resident contractor preference are legitimate.  In <u>Smith Setzer</u>, the Fourth Circuit upheld a South Carolina statute favoring residents, which the state defined expansively, who bid on state procurement contracts.  The Fourth Circuit felt that <u>Metropolitan Life</u> and <u>Northeast Bancorp</u> taken together indicated only that a state must articulate some reason for preference statutes "beyond the fact that they favored those that they favored."  <u>Smith Setzer</u>, 20 F.3d at 1322.  In <u>Smith Setzer</u>, the allocation of tax money by a state was "as much a matter of profound local concern" as were the bank preference statutes in <u>Northeast Bancorp</u>.  <u>See id.</u> at 1323 (quotations omitted).  In <u>Bristol Steel & Iron Works</u>, 507 So. 2d at 1235, the Louisiana Supreme Court upheld a statute favoring incorporated construction contractors who resided in state, whose majority interests were controlled by state residents, or who maintained a certain business presence in state.  Encouraging Louisiana industry was a legitimate state interest.  <u>See id.</u> at 1236. In <u>Gary Concrete Prods.</u>, 331 S.E.2d at 337, the South Carolina Supreme Court upheld a statute

favoring contractors bidding for state procurements who were authorized to transact business in state, maintained an office in state, kept representative commodities in state and paid all taxes. Directing benefits, in the form of state purchases, to the citizens of South Carolina was a legitimate purpose.  See id. at 339.  Even the Alaskan court in Lynden, 532 P.2d at 702-03, which struck down a state statute giving resident motor carriers extended in-state trucking routes at the expense of non-residents found the purposes it framed to be proper.  Securing good transportation services and fostering sound economic practices among carriers were rational aims. See id. at 708.  The law failed largely for other reasons.  See id.  To the extent that the Alaska law lacked a legitimate purpose--handicapping nonresidents seeking to do business in state--reliance on Lynden is misplaced because that purpose is not even proposed here.  In sum, encouraging economic development in New Mexico, directing state funds to state taxpayers, and supporting New Mexico's road construction industry are legitimate purposes.

C.    Rational relationship

Plaintiffs contend that the restrictive definition in the Public Works Contract Code preference provision lacks a rational relationship to its purported purposes.  Specifically, they argue that restricting preferences to corporations incorporated in New Mexico, who maintain a principal place of business here, and whose shares are owned in the majority by one or more citizen/domiciliaries, lacks a rational relationship to various methods of economic development in New Mexico and the prevention of economic leakage.

Plaintiffs are correct in noting that most, if not all, of the decisions considering preference provisions cited by the parties involved definitions for the favored class that, at least facially, gave greater weight to business activity in state.  See, e.g., Smith Setzer, 20 F.3d at 1315 (corporation

must be authorized to transact business within the state and maintain a representative inventory of commodities on which the bid is submitted or meet other similar criteria); Associated General Contractors, 813 F.2d at 943 n.44 (business firm must have fixed office or distribution point within the city or county and pay permits and licenses using a San Francisco business address); Bristol, 507 So. 2d at 1235 (resident contractor must reside in state for at least two years, must be owned or controlled by state residents or maintain a state contractors license while present in the state for two years during which time ownership or control cannot have changed); Gary Concrete Prods., 331 S.E.2d at 337 (corporation must be authorized to transact business in state, maintain an office in state, keep in state a representative stock of the commodities upon which bid submitted, and pay all duly assessed taxes); Galesburg Construction, 641 P.2d at 747-50 (corporation must be formed in Wyoming and in existence for a year prior to bidding).

Plaintiffs also correctly note evidence tending to show that the Public Works Contract Code operates to the detriment of the state and its taxpayers and is thus irrational. Plaintiffs' expert, Dr. Steven Craig, provided extensive and detailed testimony that the Public Works Contract Code "preference statute is insufficient by a wide margin to generate enough income to pay for itself." (Stip. Ex. 5B.)[4] Defendants' expert, Dr. Brian McDonald, proffers his own opinion that awarding state contracts to McCrossan Construction would have resulted in leakage which did not occur because the contracts were awarded to a resident as that term is defined under the Public Works Contract Code.

While the economic evidence on the effects of the preference provision is enlightening, not to mention voluminous, the arguments surrounding it to a large extent miss the mark. The

---

[4] Dr. Craig does note a benefit accruing to suppliers to state government. (Stip. Ex. 5B.)

relevant inquiry is not whether a statute, when viewed in hindsight through the lens of an economist, is effective in achieving its purpose. The test is whether the New Mexico state legislature could rationally have believed at the time it enacted the Public Works Contract Code that it would achieve its purposes. See Allright Colorado, Inc. v. City and County of Denver, 937 F.2d 1502, 1512 (10th Cir. 1991) (citing Minnesota v. Clover Leaf Creamery Co., 449 US. 456, 464 (1981)); Smith Setzer, 20 F.3d at 1323 (same). Specifically, the question is whether the legislature could have believed, within the bounds of reason, whether comparatively stringent residency qualifications would further the purpose of the Public Works Contract Code. While there are indeed cases in which legislation has failed to meet this admittedly deferential standard, most notably Metropolitan Life, this case does not present such an instance. See Metropolitan Life, 470 U.S. at 884-85 (O'Connor, J., dissenting, taking majority to task for failing to apply proper deference to state legislature).

If business activity in New Mexico is, as Plaintiffs maintain, the true vehicle for accomplishing the statute's purposes, it is not at all irrational for the New Mexico legislature to behave as it did. It is not irrational for the legislature to have believed at the time of passage that requiring one qualifying for the Public Works Contract Code preference to be "incorporated in New Mexico and maintain its principal office and place of business in New Mexico, and [have] a majority of its outstanding shares be beneficially owned by one or more individual citizens who are domiciled in the state" would encourage economic development in New Mexico, direct state funds to state taxpayers, and support New Mexico's road construction industry. N.M. Stat. Ann. § 13-4-2(B)(1). As to one purpose, directing state funds to state taxpayers, Plaintiffs do not and cannot dispute that the preference provision achieves its aim. While Plaintiffs respond that the

provision in effect withholds state funds from state taxpayers such as McCrossan Construction, even if correct, Plaintiff's argument is essentially irrelevant. State money goes to state taxpayers, so the law still furthers its purpose.

The only serious dispute relates to the purpose of promoting economic development in New Mexico, about which the experts have split. Again, however, the question is whether the New Mexico legislature could have rationally believed that the preference provision would advance its purposes See Heller, 509 U.S. at 321 ("[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality.") (quotations and citations omitted); City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."). The New Mexico legislature could have believed rationally at the time it passed the law, as does at least one expert economist, that the resident contractor preference would help this state. That the legislature could have drafted the law to better fulfill its purposes or even that a better-fitting example is already codified elsewhere in the statutes does not change the fact that the law advances its aims. The preference provision in the Public Works Contract Code therefore does not violate the Equal Protection Clause.

III.    Privileges and Immunities Clause

The Privileges and Immunities Clause states that "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." The purpose of the

clause is

> to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws.

Paul v. Virginia, 75 U.S. 168, 180 (1869).

A Privileges and Immunities Clause analysis involves two steps. A law that burdens one person over another on the basis of state citizenship will be upheld if (1) there is a substantial reason for the difference in treatment; and (2) the discrimination practiced against nonresidents bears a substantial or close relationship to the state's objective. See Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 284 (1978). Plaintiff argues that there is no substantial reason for the resident contract preference provision, but even if there is, the resulting disparate treatment has no substantial or close relationship to the law's purpose. Defendants argue that there are substantial reasons for the preference provision and that it is a close fit to the provision's objectives.

A.    Standing

The closest question in the Privileges and Immunities context, however, concerns Plaintiff Charles S. McCrossan's standing.[5]  To have standing to sue, a plaintiff must show, inter alia, that he has suffered some injury-in-fact. See Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 103 (1998). Defendants appear to agree that Plaintiff Charles S. McCrossan has suffered

---

[5] Plaintiff McCrossan Construction concedes that it has no standing to assert a Privileges and Immunities claim. See Western and S., 451 U.S. at 656.

an injury which might lend him standing to sue under Article III. Defendants argue essentially that Plaintiff Charles S. McCrossan runs afoul of the prudential standing rule that a shareholder does not, generally, have standing to assert claims for wrongs to the corporation in which he holds shares. See United States v. Palmer, 578 F.2d 144, 146 (5th Cir. 1978). Cf. Franchise Tax. Board v. Alcan Aluminum Ltd., 493 U.S. 331, 336-37 (1990) (distinguishing between Article III and prudential standing). Defendants note that Plaintiff Charles S. McCrossan has never personally bid on a New Mexico highway construction project and that his only relation to this case is as the majority shareholder of Plaintiff McCrossan Construction and as an officer of that company. They further note that Plaintiff Charles S. McCrossan has not "changed his role" in any way as a result of the application of the preference provision to Plaintiff McCrossan Construction. Plaintiff Charles S. McCrossan, on the other hand, maintains that the operation of the preference provision injures his right to own stock, a protected privilege, by discriminating against him on the basis of his Minnesota citizenship and preventing him from competing equally with New Mexicans. He does not claim an economic

injury.[6]

Defendants rely heavily on Smith Setzer to argue that Plaintiff Charles S. McCrossan lacks standing. In Smith Setzer there were two plaintiffs: a closely-held corporate plaintiff and a

---

[6] Plaintiff Charles S. McCrossan also does not claim standing to contest that portion of the preference provision requiring that qualifying companies be incorporated in New Mexico. Although Plaintiffs together challenge the New Mexico incorporation requirement in the First Amended Complaint and in the oral and written arguments made under the Equal Protection Clause, Plaintiff Charles S. McCrossan appears to concede in his oral and written arguments that New Mexico may validly require that a corporation seeking resident status incorporate in state without offending the Privileges and Immunities Clause.

shareholder who served as president. The shareholder/president plaintiff attempted to assert the Privileges and Immunities claim alone against the application of a South Carolina procurement preference provision. The Fourth Circuit held that he lacked standing.

> In this case, all bids were submitted by the corporation, Smith Setzer. Any injury to Neil Setzer comes from the application of the preference scheme to undercut Smith Setzer's low bids, resulting in the loss of revenue and earnings to Smith Setzer. If, counterfactually, Neil Setzer had submitted bids as an individual, or if Smith Setzer were not incorporated, he would have standing to assert this claim. But the bids were the corporation's, and so is the injury. Neil Setzer does not show the type of individualized harm that is necessary to support such a claim. Instead, all injury is merely derivative of the injury to the corporation, which is not constitutionally cognizable under the Privileges and Immunities Clause. Although Neil Setzer wishes to discard the separate entity doctrine in this instance, such an action would vitiate the established rule against corporate standing in its entirety, while disregarding settled theory of corporate law. Such an action would authorize multitudinous litigation and ignore the corporate entity. Simply stated, the claimed damages are those of the corporation, not those of the appellant.

Smith Setzer, 20 F.3d at 1317-18.

Two key differences in this case lead to the opposite outcome. First, the individual plaintiff in Smith Setzer claimed an economic injury. He argued that the corporation's loss of revenue through the application of the preference provision was an injurious loss of income to himself. See id. at 1316-17. Any injuries to the individual plaintiff were therefore derived through the corporation. Thus, although the plaintiff suffered economic harm, he lacked standing. Plaintiff Charles S. McCrossan makes a different argument. He claims that the preference provision injures him constitutionally by burdening his right to own a business by discriminating against him on the basis of state citizenship, preventing him from competing equally with New Mexicans.

Second, the preference provision at issue in this case is fundamentally different from from that in Smith Setzer. The law in Smith Setzer defined resident vendors as follows:

14

an individual, partnership, association, or corporation that is authorized to transact business within the State, maintains an office in the State, maintains a representative inventory of commodities on which the bid is submitted or is a manufacturer which is headquartered and has a ten million dollar payroll in South Carolina and the product is made or processed from raw materials into a finished end product by such manufacturer or an affiliate (as defined in Section 1563 of the Internal Revenue Code) of such manufacturer, and has paid all assessed taxes.

Smith Setzer, 20 F.3d at 1315. The South Carolina law contrasts with the New Mexico resident contractor preference:

if the bidder is a corporation, it shall [1] be incorporated in New Mexico and [2] maintain its principal office and place of business in New Mexico, and [3] a majority of its outstanding shares shall be beneficially owned by one or more individual citizens who are domiciled in the state.

N.M. Stat. Ann. § 13-4-2(B)(1). While the South Carolina law is a confusing tangle of conjunctions and disjunctions, its focus seems to be on in-state business activity. No part of the South Carolina statute requires that to qualify for the preference one must be a citizen and domiciliary of the state, in contrast with the third component of the New Mexico statute. It is from this requirement, injuring as it does his constitutional privileges, that Plaintiff Charles S. McCrossan derives his standing.

The Tenth Circuit addressed a somewhat similar standing issue in Smith v. Paulk, 705 F.2d 1279 (10th Cir. 1983). In that case the plaintiff was an Iowa resident who sought to operate an employment agency in Oklahoma. Oklahoma required that private employment agencies be licensed. When plaintiff submitted his license application, on behalf of a corporation yet to be formed and for which the plaintiff would be the president, manager and sole shareholder, the defendant Commissioner of Labor turned him down. Oklahoma law required that successful applicants be Oklahoma residents for at least a year, so because the plaintiff was not an

Oklahoman, the state denied him a license. He challenged the Oklahoma one year residency requirement on various grounds, including the Privileges and Immunities Clause. Before ultimately finding that the law's one year residency provision violated the right to travel, the Tenth Circuit performed a standing-like analysis, albeit without ever using the word "standing." It found that the plaintiff did "have the benefit of the Privileges and Immunities [Clause]" because the application of the statute prohibited him from serving as the general manager, incorporator or principal officer for the corporation to be formed in compliance with the invalid

law, directly impinging on his rights.[7]

---

[7] The only specifically identified right impinged in Smith v. Paulk was the constitutional right to travel, in contrast with the right here at issue here, to be an owner of a highway construction company. While the right at stake in this case might not by itself be elevated to constitutional status, because it is trammeled solely on the basis of citizenship, that right is constitutionally protected by the Privileges and Immunities Clause, particularly when viewed as tantamount to a right to earn a living--a right repeatedly upheld under the Clause. See Piper, 470 U.S. at 281 (practicing law); Hicklin v. Orbeck, 437 U.S. 518, 520 (1978) (working on state pipeline projects); Toomer v. Witsell, 334 U.S. 385, 387-88 (1948) (shrimping); Tafoya v. City of Albuquerque, 751 F. Supp. 1527, 1528 (D.N.M. 1990) (selling "wares").

Also, while the plaintiff in Smith v. Paulk did raise the question of an individual shareholder's standing to assert a Privileges and Immunities claim, he only challenged the constitutionality of the one-year requirement, not that of the residency provision. The dicta in that case perceiving no infirmity with requiring plaintiff to be an Oklahoma resident therefore does not control. Even if it did, the Tenth Circuit's apparent primary concern--the statutory disruption that invalidation of the residency requirement would bring--is not present here. See Smith v. Paulk, 705 F.2d at 1284-85.

The Fifth Circuit also faced a similar issue in <u>Cooper v. McBeath</u>, 11 F.3d 547 (5th Cir. 1994). In that case, two non-Texas residents sought to operate a Texas corporation holding a liquor license. Texas law, however, forbade the issuance of a liquor license to any corporation of which non-Texans owned at least fifty-one percent. The Fifth Circuit held that the fifty-one percent rule contemplated that the "direct focus" was on the shareholders. The plaintiff therefore had prudential standing to assert his individual constitutional claims.[8]

So too in this case are Plaintiff Charles S. McCrossan's rights to the privileges and immunities of New Mexico law impinged. The New Mexico preference provision's definition of qualifying resident targets Plaintiff Charles S. McCrossan directly. Certainly Plaintiff can form a corporation and seek to do business in New Mexico (and indeed he has done both), but so could the plaintiffs in <u>Smith v. Paulk</u> and <u>Cooper</u>. To contend as Defendants do that Plaintiff Charles S. McCrossan may still own shares in Plaintiff McCrossan Construction and has thus not been injured is disingenuous. What the Fifth Circuit protected in <u>Cooper</u>, what the Tenth Circuit protected in <u>Smith v. Paulk</u>, and what is protected here is the right to own shares, in a meaningful manner, by providing standing to a shareholder whom a statute targets on the basis of state citizenship. That the corporate Plaintiff has also suffered an injury, for which it lacks standing to pursue, is irrelevant. <u>See</u> <u>Franchise Tax Bd. of Cal. v. Alcan Aluminum</u>, 493 U.S. 331, 336 (1990).

The finding that Plaintiff Charles S. McCrossan has standing is not changed by the <u>Chance Management</u> decisions. <u>See</u> <u>Chance Management, Inc. v. South Dakota</u>, 876 F.Supp. 209

---

[8] The court decided the case in the plaintiffs' favor on Commerce Clause grounds and did not reach the Privileges and Immunities question.

(D.S.D. 1995), _affirmed_, 97 F.3d 1107 (8th Cir. 1996).  In those cases, a non-South Dakota

plaintiff alleged that a South Dakota statute requiring that video lottery corporations be owned in

the majority by South Dakotans violated the Privileges and Immunities Clause.  The district court

found that the individual plaintiff did not have standing because he could still serve as a director,

officer, or employee of the corporation--just not if the company wanted to operate video gaming

machines in South Dakota.  Therefore, the district court concluded, he suffered no injury separate

from the corporation and thus had no standing.  See Chance Management, 876 F. Supp. at 213.

The Eighth Circuit affirmed without discussing the allegation central to this case--that the statute

discriminates among corporations by the citizenship of its shareholders.  See Chance

Management, 97 F.3d at 1117-18.

The district court's analysis in Chance Management is unpersuasive in that it fails to fully

consider the injury, whether constitutional or financial, alleged by the individual plaintiff.

Moreover, the district court's approach seems to allow no room for independent shareholder

standing, even when a state law directly targets a shareholder on the basis of state citizenship, an

approach rejected by the Tenth Circuit in Smith v. Paulk.  The Eighth Circuit's affirmation, which

rested largely on the absence of an individual video gaming application, provides no guidance and

therefore does not disturb the result here.

As a brief final illustration, the Court in Supreme Court of Virginia v Friedman, 487 U.S.

59 (1988), tested against the Privileges and Immunities Clause a Virginia rule requiring that non-

exam-taking bar applicants reside in-state.  The Court framed the issue as "whether the State has

burdened the right to practice law, a privilege protected by the Privileges and Immunities Clause,

by discriminating against otherwise equally qualified applicants solely on the basis of citizenship or

residency." See Friedman, 487 U.S. at 67. The question in this case is whether the state has burdened the right to own a business, a protected privilege, by discriminating against owners solely on the basis of citizenship. I conclude that it has.

B.      Substantial reason and substantial or close relationship

Finding a burden on a protected privilege does not end the inquiry. A statute injuring a person's rights on the basis of state citizenship will be upheld if there is a substantial reason for the dissimilar treatment, bearing a substantial or a close relationship to the state's aim. See Piper, 470 U.S. at 284; Friedman, 487 U.S. at 65. For example, a state may, without offending the Privileges and Immunities Clause, condition the provision of welfare benefits or voting rights on state citizenship. See Baldwin v. Fish and Game Commission of Montana, 436 U.S. 371, 383 (1978) (collecting cases).

The substantial reasons put forward in the privileges and immunities context are the same as those legitimate purposes analyzed with respect to the Equal Protection Clause, namely, promoting economic development in New Mexico directly and indirectly, sending state funds to state taxpayers, and preventing leakage. The Court faced similar although not identical purposes in Hicklin. There the plaintiffs, who did not qualify for Alaska residency, challenged an Alaska law awarding pipeline construction jobs to Alaskans. The Court noted that a substantial reason for favoring Alaskans would not exist without something to indicate that non-citizens constitute a "peculiar source of the evil at which the discriminatory statute is aimed." Hicklin, 437 U.S. at 526-27 (quotations and citations omitted). The Court refused to allow Alaska to remedy its unemployment problem in the way it attempted. Instead, the Court held that even if the state succeeded in showing that non-Alaskans were detrimental to the state, presumably by taking jobs

19

from Alaskans, the Alaska law failed for want of a substantial relationship to the evil the non-residents were said to present.  Id. at 257.

Hicklin points to a similar result in this case.  Just as remedying Alaska unemployment by keeping jobs from able non-Alaskans was dubious there, so is promoting economic development and the road construction industry in New Mexico by keeping non-New Mexicans at bay through operation of a preference provision for state residents.  But even assuming that non-New Mexicans like Plaintiff Charles S. McCrossan do provide substantial reasons for treating them differently, the resident contractor preference provision lacks a substantial or close relationship to that purpose.

While Defendants argue that the preference provision "focuses on the corporations who are truly problematic," their arguments as to the focus of the law are not persuasive.  Defendants acknowledge that the preference provision found in the Procurement Code would not exclude Plaintiffs from plying their trade in New Mexico without having to underbid by five percent a corporation owned by a New Mexican.[9]  (Defs' Br. on the Merits at 27.)  The Procurement Contract Code defines a resident contractor as

> a business that is authorized to do and is doing business under the laws of this state and:
> (a)      that maintains its principal place of business in the state;
> (b)      has staffed an office and has paid applicable state taxes for two years prior to the awarding of the bid and has five or more employees who are residents of the state; or
> (c)      is an affiliate of a business that meets the requirements of Subparagraph (a) or (b) of this paragraph.

---

[9] Plaintiffs argue that McCrossan Construction would qualify under subsection (b).  The stipulated facts show that McCrossan Construction has since 1981 employed on average at least fifty New Mexico residents per year, and that it has paid in excess of $4.3 million in state gross receipts taxes and $250,000 in personal property taxes.  Since 1991 it has spent in excess of $20 million with New Mexico vendors and sub-contractors.

N.M. Stat. Ann. § 13-1-21 (A)(2).  There is no mention of shareholder citizenship or residency, in contrast with the Public Works Contract Code.  Instead, the Procurement Contract Code preference provision furthers the same economic purposes as its Public Works Contract Code counterpart but does so with emphasis on more economic criteria.  It is therefore better focused.[10]

Plaintiffs have met their burden of proving that the Public Works Contract Code is not closely or substantially related to its purposes, see Hicklin, 437 U.S. at 526, by pointing to the better-tailored Procurement Contract Code.  Accordingly, there is no need to engage in the speculation that the Court undertook with great hesitation and only out of necessity in Friedman on how a rule-making body could do a better job.  See Friedman, 487 U.S. at 69.  A court, of course, "is not well positioned to dictate specific legislative choices to the State"--but in this case it does not need to.  Id.  An example of a more closely or substantially related law, which would better further the purposes adduced without the same risk of denying non-New Mexicans the privileges and immunities of New Mexico law, is already in the New Mexico statutes.

IV.    Relief

In their First Amended Complaint [Doc. No. 16], Plaintiffs ask that the court declare "the 'Resident Contractor' preference of §§ 13-4-1 and 13-4-2" unconstitutional and enjoin its enforcement.  However, Charles S. McCrossan is the only prevailing Plaintiff and he prevailed only as to the claim that the citizenship and domicile component of the preference provision in the Public Works Contract Code was unconstitutional.  Therefore, that part (and that part only) is

---

[10] Even Defendants' expert, Professor McDonald, could not adequately explain why the preference provision in the Public Works Contract Code was more stringent than that in the Procurement Contract Code.  Professor McDonald first stated that "[t]here would be less economic leakages [sic]" under the Procurement Contract Code, but then indicated that he could not articulate any reason for the difference between the two provisions.  (Stip. Ex. 7 at 20.)

declared unconstitutional. Specifically, the underscored language, noted below, in N.M. Stat.

Ann. § 13-4-2 (B)(1), violates the Privileges and Immunities Clause of Article IV, Section 2 of the

United States Constitution:

> if the bidder is a corporation, it shall be incorporated in New Mexico and maintain its principal office and place of business in New Mexico, <u>and a majority of its outstanding shares shall be beneficially owned by one or more individual citizens who are domiciled in the state;</u>

Defendants will be enjoined from enforcing the underscored portion of the statute. That portion

is severed from the remainder of subsection 13-4-2 (B)(1), in accordance with N.M. Stat. Ann. §

12-2A-9, as the remainder of subsection (B)(1) can be given effect without the invalid provision.

Plaintiffs also request attorney's fees under 42 U.S.C. § 1988. Defendants have not

responded with an argument that "special circumstances would render such an award unjust" or

indeed with any argument at all against an award. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 164

(1995).

IT IS THEREFORE ORDERED THAT

(1)  in part, the Public Works Contract Code resident contractor preference provision

(N.M. Stat. Ann. § 13-4-2 (B)(1)) violates in part the Privileges and Immunities

Clause of Article IV, Section Two of the United States Constitution;

(2)  the phrase "and a majority of its outstanding shares shall be beneficially owned by

one or more individual citizens who are domiciled in the state" is severed from

N.M. Stat. Ann. § 13-4-2 (B)(1) and Defendants are enjoined from enforcing this

part of N.M. Stat. Ann. § 13-4-2 (B)(1); and

(3)  Plaintiff Charles S. McCrossan will be awarded a reasonable attorney's fee under

42 U.S.C. § 1988 and he must submit, by March 10, 2000, an affidavit itemizing attorney services and justifying the amount of requested attorney's fees.


_____

**UNITED STATES DISTRICT JUDGE**